**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| DANIEL P. SWARTZ and | ) | |
| CARRIE A. SWARTZ, | ) | Case No. 05-70667 |
| | ) | |
| Debtors | ) | |
| | ) | |
| DANIEL P. SWARTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adv. No. 05-4156 |
| | ) | |
| SHAWNETTA SWARTZ, | ) | |
| | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

The Debtor, Daniel P. Swartz, filed this adversary action to obtain a determination that $172,956 in "maintenance" he was ordered to pay his ex-wife, Shawnetta Swartz ("Defendant"), under the decree dissolving their marriage is dischargeable. Although maintenance is generally nondischargeable under § 523(a)(5) of the Bankruptcy Code, and despite the decree's reference to the $172,956 debt as maintenance, the Debtor maintains that the debt is dischargeable because it was a property equalization payment for the Defendant's interest in their jointly owned company, which the divorce decree awarded to him. Not surprisingly, the Defendant disputes the Debtor's characterization of the maintenance award; according to her, the award was intended to allow her to obtain her education and to become self-sufficient – exactly the purpose maintenance awards are supposed to serve. The Defendant also filed a counterclaim against the Debtor to obtain a determination under § 11 U.S.C. § 523(a)(15) that the debts the Debtor assumed under the divorce decree and a corresponding settlement agreement are also nondischargeable.

The Court held a trial on this matter on February 23, 2006. Both parties were represented by counsel and offered testimony and evidence in support of their positions. At the conclusion of the trial, the Court took the matter under advisement.

1

Upon review of the evidence and relevant law, the Court makes the following findings of fact and conclusions of law.

**STATEMENT OF FACTS**

The Debtor and the Defendant were married on April 18, 1987, and divorced on September 26, 2003. Under the Decree dissolving their marriage, the Debtor has primary custody of one child, Brandon (18), and the Defendant has primary custody of the parties= other three children: Carmen (15), Jonathan (8), and Rebecca (5).[1] The Decree awards each party child support, but the net monthly amount favors the Defendant by $1,665.[2] The Decree also requires that the Debtor pay the Defendant $172,956 in Anon-modifiable maintenance@ in periodic payments spread over five years: $3,315 per month for a total of 24 months, followed by $2,774 per month for 24 months, followed by $2,233 for 12 months.[3] Under the terms of the Decree, these payments Ashall be deemed includable [sic] to Respondent [wife] as income and deductible by Petitioner [husband] for income tax purposes...[and they] shall not terminate upon death of either party or the remarriage of Respondent.@[4]

The terms of the Decree largely echo the terms of the ASeparation and Property Settlement Agreement@ (ASettlement Agreement@) the parties signed shortly before the Decree was entered. The Settlement Agreement also lists various debts for which the Debtor assumes the obligation to pay and to hold the Defendant harmless.

Until the year of their divorce, the Debtor and the Defendant owned a successful business called Preferred Door & Window (APDW@), which sold and installed garage doors and windows. The Debtor owned 60% of PDW and made about $134,000 a year running the business. The Defendant owned 40% of PDW and made about $34,000 working in the office. In 2003, however, their business – and apparently their personal relationship – took a turn for the worse. The Defendant stopped working at PDW in April

---

[1] Decree, at pp. 3 and 7.

[2] Decree, at pp. 5 and 7. The Debtor does seek to discharge this obligation.

[3] Decree, at pp. 9-10.

[4] *Id.*

2003, and on June 19, 2003, the Debtor wrote the Defendant a check for $10,000. The memo on the check indicates that it was for "Divorce/Stock 10,000 of 15,000." The parties dispute the meaning of this notation, although both agree that it was related to the divorce. The Debtor claims that "Stock 10,000 of 15,000" referred to shares of stock, and that the $10,000 was a partial buyout of her 40% share in the business. The Defendant claims that the "10,000 of 15,000" referred only to dollars, and that the $10,000 was a partial payment for a complete buyout of her interest in PDW.

September 2003 marked the beginning of the end of the business for the Debtor. The Debtor testified that in September he embarked on a major expansion of the business, but as a result of mismanagement and various miscalculations, the attempted expansion left PDW overextended and unable to meet its commitments to its customers and creditors. In July 2004, almost a year after the divorce, the Debtor salvaged what he could out of the business and sold it for $46,000, payable over three years. But the Debtor claims that he received very little money from the sale because the purchaser withheld money to pay prior liabilities of the business.

The Debtor has had a number of jobs since he sold the business, including a failed attempt to start a construction company. In July of 2005, the Debtor obtained his current employment selling copiers for a company called Unisource, Inc., where he makes approximately $2,308 in net monthly wages, plus commissions if he reaches certain sales benchmarks. Although he testified that it is difficult to meet those benchmarks, he received commissions of $1,761 in January of 2006. The Debtor has remarried, and his wife, Carrie Swartz, contributes an additional $1,488.17 (including $485 she receives in child support) to their household.

The Defendant, in contrast, has remained unemployed since the divorce, with the exception of an extremely brief stint at a craft supply store in 2005 (for which she was paid $306.25). Her income is comprised almost entirely of child support payments she receives from the Debtor. And that income is insufficient to meet her day-to-day expenses. The Defendant testified that she would like to work, but she has no marketable skills, she does not have a college degree, and she has to spend most of her time taking care of her children. She is attending school to become an interior decorator, but it is unclear whether she will be able to continue her education without additional income.

**DISCUSSION**

The Decree dissolving the Debtor's and the Defendant's marriage ordered the Debtor to pay the Defendant Amaintenance@ of $172,956 over five years. The Settlement Agreement contains the same maintenance provision and also includes a provision obligating the Debtor to pay and to hold the Defendant harmless for certain debts listed in the Settlement Agreement. In this action, the Debtor seeks to re-characterize the maintenance obligation as a property settlement, thus taking it out from under the provisions of Section 523(a)(5) and potentially rendering it dischargeable under ' 523(a)(15), and to discharge his obligation to the Defendant to assume and hold her harmless for the debts listed in the Settlement Agreement. The Defendant, on the other hand, seeks to enforce the maintenance obligation as written in the Decree and Settlement Agreement and to obtain a determination that the hold harmless obligation is nondischargeable under 11 U.S.C. ' 523(a)(15).

*11 U.S.C. ' 523(a)(5) - Dischargeability of Maintenance Award*

Section 523(a)(5) of the Bankruptcy Code excepts from discharge debts in the nature of alimony, maintenance, and child support.[5] In determining whether a debt is in the nature of alimony, maintenance, or child support, "the crucial issue is the function the award was intended to serve."[6] The party seeking to establish the nondischargeability of a debt bears the burden of proving that intent, regardless of who brings the action.[7] In this case, this framework creates a somewhat anomalous posture in that the party bringing the action is seeking a determination that the debt is dischargeable because it was allegedly intended to serve a function other than maintenance. But that anomaly is easily resolved because exceptions to discharge for domestic relations debts are liberally construed in favor of the objecting creditor (as opposed to the other exceptions to discharge which are strictly construed),[8] and under a liberal (or strict, for that matter) construction, the evidence the Debtor offered in support of his case-in-chief actually satisfied the

---

[5] 11 U.S.C. ' 523(a)(5).

[6] *Id.*

[7] *Portwood v. Young* (*In re Portwood*), 308 B.R. 351, 355 (B.A.P. 8th Cir. 2004).

[8] *Id.*

Defendant=s burden of proving that the obligation labeled in the Decree as Amaintenance@ was, indeed, intended to serve as maintenance.

Quite simply, the Debtor failed to produce a single shred of evidence, other than his self-serving, uncorroborated testimony, to support his contention that he and the Defendant intended the $172,956 obligation labeled as maintenance in the Decree and Settlement Agreement to be a buyout of the Defendant=s interest in their business. To the contrary, all of the evidence he offered either was equivocal or supported the opposite conclusion, *i.e.*, that the award was intended just as it was labeled B as maintenance. For example, the Debtor offered into evidence the check for $10,000 he gave to the Defendant on June 19, 2003. On the check he noted ADivorce/Buyout 10,000 of 15,000.@ At trial he argued that the notation meant 10,000 of 15,000 shares, and not $10,000 of $15,000 (as the Defendant later testified), as if his interpretation supported his position that the maintenance award in the Decree and Settlement Agreement was intended as a buyout. But the Debtor never explained how the remaining 5,000 shares were worth $172,956.[9] Nor did he explain why his 2003 tax returns show that as of July 1, 2003, the Defendant no longer had an interest in the business. The most plausible explanation for the $10,000 check to the Defendant and the note on the check is that the Debtor intended to buy the Defendant out for $15,000 but only paid her $10,000 at the time.

The Debtor contends that the provision in the Decree requiring him to pay Amaintenance@ even after the Defendant dies or remarries is evidence that the parties= did not intend the award to serve as maintenance, inasmuch as maintenance obligations usually terminate upon the recipient=s remarriage or death. But that inconsistency is only one factor to be considered in evaluating the parties= intent.[10] In determining whether a domestic relations debt is in the nature of maintenance or alimony, courts consider: (1) the income and needs of the parties at the time of the decree; (2) whether the obligation terminates on death or remarriage; (3) the number and frequency of payments; (4) the tax treatment of the obligation; and (6) the label given to the obligation in the decree. In this case, all of these factors, except for the termination

---

[9] In that vein, the Debtor never offered any evidence that the Defendant=s share of the business was worth $172,956, despite the obvious probity of such evidence.

[10] *Moeder v. Moeder* (*In re Moeder*), 220 B.R. 52, 55 (B.A.P. 8th Cir. 1998).

provision, weigh in favor of a finding that the debt is in the nature of maintenance. Furthermore, it would be an enormous leap to conclude that the inclusion of that provision, standing alone, means that the parties intended the maintenance award to function as a buyout of the Defendant=s interest in the business.

Therefore, for the reasons stated above, the Court finds that the Debtor and the Defendant intended the $172,956 obligation labeled as maintenance in the Decree and Settlement Agreement to be in the nature of maintenance. Accordingly, it is excepted from discharge under 11 U.S.C. ' 523(a)(5).

*11 U.S.C. ' 523(a)(15) - Dischargeability of Assumption of Debt / Hold Harmless Obligation*

The Defendant=s counterclaim in this action seeks a determination that the obligation in the Decree and Settlement Agreement that the Debtor assume certain marital debts and hold the Defendant harmless for those debts is nondischargeable under 11 U.S.C. ' 523(a)(15). Section 523(a)(15) excepts from discharge debts that are incurred by a debtor in connection with a divorce or separation, unless the debtor is unable to pay those debts or the benefit of discharging those debts outweighs the detrimental consequences to a former spouse or child of the debtor.[11] Under ' 523(a)(15), the creditor bears the initial burden of proof that a debt falls within the parameters of ' 523(a)(15) B *i.e.*, the creditor must show that the debt was incurred in the course of a dissolution proceeding B and then the burden shifts to the debtor to establish that the debt is dischargeable because the debtor does not have the ability to pay or the benefit to the debtor outweighs the detriment to the spouse or child.[12]

Here, there is no dispute that the Debtor=s obligation to assume and hold the Defendant harmless for the marital debts listed in the Decree and Settlement Agreement arose out of the Decree and Settlement Agreement dissolving the parties= marriage. Thus, the Defendant met her initial burden to show the debts were incurred in a dissolution proceeding. Consequently, to be granted a discharge on these debts, the Debtor had to show either 1) that he does not have the ability to pay the debts or 2) that the benefit to him in discharging the debts outweighs the detrimental consequences to the Defendant.

---

[11] 11 U.S.C. ' 523(a)(15).

[12] *Fellner v. Fellner* (*In re Fellner*), 256 B.R. 898, 902-03 (B.A.P. 8th Cir. 2001).

The Court does not need to reach the second prong of this analysis because it finds that the Debtor does not have the ability to pay the Debts, especially after taking into account the impact of excepting from discharge his maintenance obligation to the Defendant.

In assessing the Debtor's "ability to pay," the Court applies the disposable income test from 11 U.S.C. ' 1325(b)(2).[13] Section 1325(b)(2) defines disposable income as those amounts not Areasonably necessary@ to support a debtor and his dependents.[14] Accordingly, for purposes of 11 U.S.C. ' 523(a)(15), a debtor will have the ability to pay a domestic relations debt if he has sufficient disposable income.

In this case, the Debtor has little or no disposable income now, and certainly will not have any after payment of the now-nondischargeable maintenance debt. According to the Debtor=s schedules, he and his wife have a combined monthly net income of $3,796.91, and expenses of $5,623, leaving a deficit of $1,826.09. With the exception of the $2,230 mortgage expense listed – which the Debtor testified is now a rental expense of $950 – the Court finds all of the Debtor=s expenses reasonably necessary for his support and the support of his dependents. With the reduction of his housing costs, the Debtor=s financial position improves substantially, but only to a lesser deficit of $876.09. The evidence indicated that the Debtor can earn, and indeed has earned, additional income from commissions, but the Court is doubtful that his commissions will ever do much more than make up the present deficit and pay his maintenance debt to the Defendant, which is sizeable. An accounting from the Circuit Court of Jackson County shows that the Debtor has only paid $39,214.85 as of February 16, 2006. So in addition to being in arrears by $54,449.07 B which amount he will eventually need to make up B the Debtor is obligated to pay the remainder of the debt ($79,292.08) under the schedule set forth in the Decree, which, according to the Court=s calculations, is $2,774 a month. It is difficult to determine the exact amount of debt the Debtor

---

[13] *Beck v. Beck* (*In re Beck*), 298 B.R. 616, 622-23 (Bankr. W.D. Mo. 2003). *See also*, *Moeder v. Moeder* (*In re Moeder*), 220 B.R. 52, 54-55 (B,A.P. 8th Cir. 1998) (recognizing that ' 523(a)(15)(A) focuses on the debtor's disposable income); *Florio v. Florio* (*In re Florio*), 187 B.R. 654, 657 (Bankr. W.D. Mo. 1995) (noting that "[o]ther courts have turned to ' 1325(b)(2)'s definition of disposable income as an aide (sic) in determining a debtor's ability to pay a ' 523(a)(15) debt.").

[14] 11 U.S.C. ' 1325(b)(2).

assumed in the Settlement Agreement, and the evidence was unclear on this point. But in light of the Court=s finding that the Debtor currently has little or no disposable income and that he is obligated to pay maintenance to the Defendant, the Court can safely conclude that the Debtor is unable to pay <u>any</u> additional debts.

Therefore, for the reasons stated above, the Court finds that the Debtor=s debt to the Defendant arising from his obligation to assume and hold her harmless from the debts listed in the Decree and Settlement Agreement will not be excepted from discharge under ' 523(a)(15).

## CONCLUSION

This opinion constitutes the Court=s findings of fact and conclusions of law. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021.

**ENTERED** this 13th day of March 2006.

<u>/s/ Jerry W. Venters</u>
HONORABLE JERRY W. VENTERS
UNITED STATES BANKRUPTCY JUDGE

A copy of the foregoing was sent
electronically or conventionally to:
Judith L. Berry
Deborah D. Conklin